UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CHARLES DONALDSON,          Case No. 1:03-cv-689

    Plaintiff,          Watson, J.
         Black, M.J.

vs.

POLICE OFFICER MARK DENNY, *et al.*,

    Defendants.

### REPORT AND RECOMMENDATION[1] THAT:
### (1) DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 32) BE GRANTED; AND (2) THIS CASE BE CLOSED.

This matter is before the Court on a motion for summary judgment filed by defendants Mark Denney[2] ("Denney") and Christopher Dezarn ("Dezarn") (collectively "defendants"). (Doc. 32).

Plaintiff Charles Donaldson is seeking damages pursuant to 42 U.S.C. § 1983 as a result of an incident that occurred on October 7, 2002, when defendants allegedly entered his residence without a search warrant and without probable cause. (*See* docs. 9, 24). Denney and Dezarn, police officers in the City of Cheviot, Ohio, maintain that they are entitled to summary judgment because plaintiff cannot prove a constitutional violation and, in any event, they are entitled to qualified immunity.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] Although the complaint names "Mark Denny" as a defendant, the correct spelling of the defendant's surname is "Denney," which will be used in this Report and Recommendation. (*See* Denney depo. at 4).

Plaintiff did not respond to the summary judgment motion.

On April 19, 2005, the undersigned entered an Order to plaintiff to show cause why the motion for summary judgment should not be construed as unopposed and granted as filed. (Doc. 43). Plaintiff did not respond to the Court's Order to show cause.

The failure to respond to either the motion for summary judgment or the Order to show cause warrants granting defendants' motion. *See* S.D. Ohio Civ. R. 7.2(a)(2). However, "a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged [his initial] burden." *Stough v. Mayville Cmty. Schools,* 138 F.3d 612, 614 (6th Cir. 1998) (quoting *Carver v. Bunch,* 946 F.2d 451, 455 (6th Cir. 1991)). For the reasons that follow, the motion for summary judgment should be granted.

## II. DISCUSSION

*A.     Standard of Review*

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might

affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party may move for summary judgment on the basis that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law. In response to a summary judgment motion properly supported by evidence, the nonmoving party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989); *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

The Court is not duty bound to search the entire record in an effort to establish a lack of genuinely disputed material facts. *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 404 (6th Cir. 1992); *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091 (1990). Rather, the burden is on the nonmoving party "to present affirmative evidence to defeat a properly supported motion for summary judgment," *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute. *Anderson,* 477 U.S. at 250; *Guarino,* 980 F.2d at 404-05. When the non-movant has failed to point out a question of fact on an issue, the district court's "reliance on the facts advanced by the movant is proper and sufficient." *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 404 (6th Cir. 1992).

B.     The Material Facts

3

*1. Plaintiff's amended complaint*

In his amended complaint, plaintiff Donaldson alleges that on or about October 7, 2002, defendants entered his residence, 3701 Harrison Avenue, Apartment 4B, Cheviot, Ohio, by force and without knocking. (Doc. 9, ¶¶ 7-8). Defendants did not have a warrant to search his residence, although they did have a warrant to search the apartment of one David Hopkins, located elsewhere in the same building. (*Id.* at ¶ 9).

Plaintiff states that he obeyed every command given to him by defendants but was nonetheless picked up by one defendant and slammed to the ground. (*Id.* at ¶ 10). Plaintiff went to a hospital for treatment of the injuries he received. (*Id.* at ¶ 12).

Allegedly, after the search, Melissa Ruehl, who resided with plaintiff, discovered that $800.00 in cash, which had been hidden in a bible, was missing. (*Id.* at ¶¶ 11, 13). Ruehl went to the police station to complain that Denney had taken the money. (*Id.* at ¶ 14).

After making her report, Ruehl returned to the apartment building, where she met Denney, who followed her inside. (*Id.* at ¶ 16). Denney took the bible from a dresser drawer and refused to give Ruehl or plaintiff the cash remaining in the bible ($120.00). (*Id.* at ¶¶ 16, 17). When plaintiff attempted to forcibly take the bible back from Denney, Denney allegedly struck him, pulled out his weapon, and threatened to shoot him. (*Id.* at ¶ 18). Plaintiff alleges that he was charged with tampering with evidence. (*Id.*)

Plaintiff alleges further that later, at the police station, Denney tried to coerce plaintiff to convince Ruehl to withdraw her allegations of theft by threatening to "ruin

4

him." (*Id.* at ¶ 18).

In all, plaintiff claims that defendants' conduct – entering the residence twice without a warrant; taking money and property without probable cause to believe it was contraband or evidence of a crime; the attempt to coerce plaintiff to give false testimony; and placing the investigation into the hands of Denney, the accused officer – violated rights protected under the Fourth, Fifth, and Fourteenth Amendments.

    2.    *Defendants' evidence*

According to defendants' testimony, the police officers entered the apartment by mistake to execute a valid search warrant and they left after confirming the identities of the occupants. (*See* Denney depo. at 31, 55; Dezarn depo. at 12). The defendants admit to using a ram to break in the door only after there had been no response to their knock and announcement. (Denney depo. at 40). Defendants also admit that one officer, Dezarn, looked through a purse and an open dresser drawer while the other officers restrained plaintiff and Ruehl. (*See* Dezarn depo. at 11-12). Defendants deny taking any money or property (*see id.* at 19-20) and claim that the police were not in the apartment more than a few minutes. (*See* Denney depo. at 55).

Denney was assigned to investigate Ruehl's complaint about the missing money because he was in charge of the search warrant team. (Denney Depo. at 56). By the time Ruehl walked back to the apartment from the station, which was only one block away, Denney was waiting for her there. He maintains that Ruehl let him into the apartment and led him to the dresser where the bible was kept. (*Id.* at 71-73).

5

Defendants admit that there was a confrontation with plaintiff when plaintiff objected to Denney taking the bible as evidence of the alleged theft. (*See id.* at 75). They further assert that two other men were present in the apartment at that time. (*Id.* at 76). Denney states that he un-holstered his weapon because the other two men were advancing towards him and plaintiff; and thus he was "outnumbered." (*Id.*) Defendants further testify that plaintiff was not arrested for tampering with evidence. (*See* Donaldson depo. at 156).

Defendants deny that anyone tried to coerce plaintiff or Ruehl into withdrawing the accusation against Denney. (Denney depo. at 96). According to defendants, plaintiff and Ruehl acknowledged that the missing money could have been taken by an overnight guest who knew of their practice of hiding money in the bible. (*See id.* at 80-81). Denney states that he only asked them whether they wanted to add the guest to the complaint or to try and resolve it informally (*Id.* at 81) and that he asked them to let him know what they wanted to do. (*Id.* at 100). He says that after they left the police station, he never heard any more from them until being served with the complaint in this case. (*Id.* at 100-01).

The bible and its contents ($120.00) later were returned to plaintiff and Ruehl. (*Id.* at 89).

C.  *Qualified Immunity*

Defendants contend that they are entitled to qualified immunity.

As noted by the Sixth Circuit, determining whether the defense of qualified

immunity attaches involves a three-step inquiry. *See Feathers v. Aey,* 319 F.3d 843, 848 (6th Cir. 2003). First, the court determines whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred. *Id.* Second, the court considers whether the violation involved a clearly established constitutional right of which a reasonable person would have known. *Id.* Third, the court determines whether the plaintiff has offered sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Id.* (quoting *Williams v. Mehra,* 186 F.3d 685, 691 (6th Cir. 1999) (en banc)). The claimant must prove all three requirements or the officials are entitled to qualified immunity. *Feathers,* 319 F.3d at 848.

Defendants are entitled to qualified immunity here because plaintiff has failed to submit any evidence to establish a violation of his constitutional rights or to show that defendants acted unreasonably in light of his clearly established rights.

　　*1.　Entering the apartment without a warrant*

On consideration of a mistaken entry as alleged here, the Sixth Circuit has determined as follows:

> [A]ny search or seizure that occurred while the officers were under the mistaken but reasonable belief that they were in fact executing the warrant at the correct residence would be protected by qualified immunity. Conversely, any search or seizure that took place after the officers knew or reasonably should have known that they were in the wrong residence would no longer be protected by qualified immunity.

*Pray v. City of Sandusky,* 49 F.3d 1154, 1159 (6th Cir. 1995).

In the absence of any evidence to contradict defendants' assertions that they entered plaintiff's apartment by mistake and left immediately upon discovering plaintiff's identity (*see* Donaldson depo. at 107), plaintiff cannot establish that defendants acted unreasonably.

Plaintiff also failed to submit any evidence showing that Denney's return to the apartment to investigate the alleged theft was not consensual. Plaintiff cannot establish a violation of his constitutional rights where Ruehl, a cohabitant in the apartment, consented to, or at least cooperated in, the officer's re-entry and search. *See United States v. Griffin,* 530 F.2d 739, 743 (7th Cir. 1976); *Bowles v. United States,* 439 F.2d 536, 540 (D.C. Cir. 1970), *cert. denied,* 401 U.S. 995 (1971).

    2.    *Taking money and property*

Plaintiff has failed to submit any evidence to establish a constitutional violation as a result of Denney's taking the bible and the remaining money placed within it. There is no evidence that either Denney or Dezarn took the $800.00. Upon the evidence, the remaining money and the bible were taken to aid in the investigation of the theft.

"Consent from an individual whose property is to be searched or from a third party who possesses common authority over the premises validates a search that would otherwise be considered unreasonable and unconstitutional." *Shamaeizadeh v. Cunigan,* 338 F.3d 535, 547 (6th Cir. 2003), *cert. denied,* 541 U.S. 1041 (2004) (citing *United States v. Matlock,* 415 U.S. 164, 171 (1974)).

In the absence of any evidence to show that Ruehl did not let Denney into the

apartment and permit him to take the bible from the dresser drawer, as asserted by defendants, plaintiff cannot establish that the taking of money and property was unreasonable or unconstitutional.

> 3. *Attempting to coerce plaintiff to give false testimony and placing the investigation into the hands of the accused officer*

Threatening or coercing a witness to give false testimony may, in some circumstances, result in a constitutional violation. *See Spurlock v. Thompson,* 300 F.3d 791, 798-801 & n.3 (6th Cir. 2003); *Swekel v. City of River Rouge,* 119 F.3d 1259, 1261-62 (6th Cir. 1997), *cert. denied,* 522 U.S. 1047 (1998). Moreover, "if a party engages in actions that effectively cover-up evidence and this action renders a plaintiff's state court remedy ineffective, they have violated his right of access to the courts." *Swekel,* 119 F.3d at 1262 (citation omitted).

To prevail on his claim, plaintiff must present evidence that the defendants' actions actually rendered any available state court remedy ineffective. *Id.* at 1264. Because plaintiff has presented no evidence that he sought a state court remedy for the alleged theft, his claim of a constitutional deprivation fails. *See id.*

Moreover, plaintiff did not offer any evidence the defendants acted unreasonably in light of clearly established rights. According to defendants, Dezarn was the officer who conducted the initial search while Denney was occupied in controlling plaintiff and Ruehl. (Dezarn depo. at 11-12). If so, then only Dezarn had an opportunity to discover and take the money hidden in the bible. Thus, it was reasonable for Denney to have led

9

the investigation, which included asking Dezarn for a statement. (*See id.* at 19-20).

Moreover, Ruehl acknowledged to Denney that Dezarn was the officer she saw searching the dresser drawer where the bible was kept. (Denney depo. at 70). Ruehl also acquiesced to Denney's suggestion that he take the bible and have it examined for fingerprints. (*Id.*) In any event, as defendants argue, there is no constitutional right to "an error-free investigation." *See Baker v. McCollan,* 443 U.S. 137, 146 (1979).

Plaintiff has not established a constitutional violation.

### III. CONCLUSION

In sum, plaintiff has not offered any evidence to establish a violation of his constitutional rights or to show that defendants' actions were objectively unreasonable. *See Feathers,* 319 F.3d at 848. There is no genuine issue of material fact, and defendants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

It is therefore **RECOMMENDED** that defendants' unopposed motion for summary judgment (Doc. 32) be **GRANTED**. As no further matters remain pending for this Court's review, the case should be **CLOSED.**


Date:   8/11/05                                                                 s/Timothy S. Black
                                                                                         Timothy S. Black
                                                                                         United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CHARLES DONALDSON, *et al.,*          Case No. 1:03-cv-689

    Plaintiffs,                               Watson, J.
                                                    Black, M.J.

vs.

POLICE OFFICER MARK DENNY, *et al.,*

    Defendants.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation within **TEN DAYS** after being served with a copy thereof.  That period may be extended by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the Report and Recommendation objected to and shall be accompanied by a memorandum of law in support of the objections.  A party may respond to an opponent's objections within **TEN DAYS** after being served with a copy those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).